**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SWARTZ AMBULANCE SERVICE, INC.,
and HARRY SWARTZ, individually,

                    Plaintiffs,

                                     Case Number: 08-11448

v.

                                     HON. MARIANNE O. BATTANI

GENESEE COUNTY, et al.,

                    Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO DISMISS**

      Before the Court is Defendants Genesee County Medical Control Authority

(GCMCA), Bruce Trevithick, and Raymond Rudoni, M. D.'s Motion for Summary

Judgment (Doc. No. 43).  The Court heard oral argument, and at the conclusion of the

hearing, the Court took this matter under advisement.  For the reasons that follow, the

Court **GRANTS** the motion.

**I. FACTUAL BACKGROUND**

      Plaintiffs Swartz Ambulance Service, Inc. ("Swartz Ambulance") and Harry

Swartz filed an action challenging the legality of the Genesee County Ambulance

Operations and Emergency Medical Services Ordinance (Ordinance), which was

enacted in December 2007, but never implemented.  Swartz Ambulance is a state-

licensed ambulance service provider operating in Genesee County.  See Compl. at ¶¶

6, 35.  Swartz is a property owner and pays property taxes in Genesee County.  Id. at ¶

7.

Defendant Genesee County Medical Control Authority (GCMCA) is "an ad hoc public entity organized and existing by reason of Public Act 179 of 1990, . . . commonly referred to as the Emergency Medical Services part of the Public Health Code. . . ." Compl. at ¶ 25.  GCMCA directs ambulance operations.  Id. at ¶ 48.  In their Complaint, Plaintiffs allege that the Public Health Code requires GCMCA, which is the designated medical control authority, to promulgate rules regarding the "practice of life support agencies and licenced emergency medical services personnel within its region."  Id. at ¶¶ 46, 47.  Defendant Rudoni is the Medical Director of GCMCA.  Defendant Trevithick is the Executive Director of GCMCA.

According to Plaintiffs, if the Ordinance is implemented, it will create two exclusive ambulance service provider "zones" in Genesee County and permit only a single ambulance provider to provide ambulance services in each, or both zones. Compl. at ¶ 39.  Further, the Ordinance subjects any ambulance provider not chosen to criminal penalties if that ambulance provider renders any services, emergency or nonemergency.   Compl. at ¶ 41.   Plaintiffs allege that, pursuant to the Ordinance, the County is required to contract with GCMCA to establish protocols consistent with the Ordinance.  Id.  at ¶ 50.

GCMCA administers the protocols under which Plaintiffs currently conduct ambulance operations, and those protocols have been approved by the Michigan Department of Community Health.  Id. at ¶¶ 52, 53.  The protocols in place govern the procedures for providing services, including the amount of time that a responding ambulance is allowed prior to departing to the patient's location.  The protocols in effect

2

do not restrict the number of licensed ambulance operations that may operate in Genesee County.  Id. at ¶ 56.  According to Plaintiffs, the Ordinance conflicts with current protocols as to method of ambulance operation entry into Genesee County, response times, and required equipment.  Id. at ¶ 67.

Plaintiffs advance numerous causes of action, and in their responsive pleading, specify that the following counts state claims against these Defendants:   Count II (injunctive relief), Count IV (Conspiracy in Restraint of Trade),  Count V (Antitrust violation), Count VI (Equal Protection violation), Count VII (Due Process violation), Count XIII (Tortious Interference With Contract), Count XIV (Tortious Interference With Business Expectancies), and Count XV (Civil Conspiracy).  Defendant Genesee County Medical Control Authority, Bruce Trevithick, and Raymond Rudoni, M.D. (the "Medical Control Defendants") move for judgment on the pleadings and/or summary judgment.

## II.  STANDARD OF REVIEW

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  JP Morgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted)).  In Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295-96 (6th Cir. 2008), the Sixth Circuit reiterated the pleading requirements that are necessary to survive a Rule 12(c) motion for judgment on the pleadings:

> In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of 'his entitle[ment] to relief' requires

3

> more than labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do. . . .  Factual allegations must be
> enough to raise a right to relief above the speculative level. . . ."  Id. at
> 1964-65 (internal citations omitted).

When reviewing a motion to dismiss, the Court must construe the complaint in the light

most favorable to the plaintiff, accept all factual allegations as true, and determine

whether the complaint contains "enough facts to state a claim to relief that is plausible

on its face."  Bell Atl. Corp. v. Twombley, 550 U.S. 544, 570 (2007).

Recently, the Supreme Court decided another case relevant to this Court's

assessment of the viability of Plaintiffs' Complaint.  In Ashcroft v. Iqbal, 129 S. Ct. 1937

(2009), the Supreme Court articulated a "two-pronged approach" to be used in

assessing whether a complaint states a claim upon which relief may be granted.  Id. at

1950.  First, a court should "identify[ ] the allegations in the complaint that are not

entitled to the assumption of truth."  Id. at 1951.  "[B]are assertions," such as those that

"amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can

provide context to the factual allegations, but are insufficient to state a claim for relief,

and must be disregarded.  Id. (quoting Twombly, 550 U.S. at 555).  After identifying the

well-pleaded factual allegations, the Court must scrutinize these facts to see if they

"plausibly suggest an entitlement to relief."  Iqbal, 129 S. Ct. at 1951.  Although even

"unrealistic or nonsensical" factual allegations must be credited, the Court now must

determine whether there are "more likely explanations" for these facts than the

inference required to support the plaintiff's legal theory.  Id. at 1950-51 (stating that

"where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the

4

pleader is entitled to relief'" (quoting Fed. R. Civ. P. 8(a)(2)).  This does not require a "probability," but "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. at 1949.

In contrast, in assessing the merits of a motion for summary judgment pursuant to Rule 56(c), a court may grant the motion only if the evidence indicates that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).  To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial.  Anderson, 477 U.S. 242.  The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness.  Matsushita, 475 U.S. at 574.

## III.  ANALYSIS

Medical Control Defendants advance four grounds for the relief requested.  First they challenge the sufficiency of the factual allegations in the Complaint.  Second, they assert that they are entitled to immunity for the antitrust claims.  Medical Control Defendants also assert that they are entitled to governmental immunity with respect to

Plaintiffs' tort claims.  Finally, they argue that the conspiracy count cannot stand once the other claims are dismissed.  The Court directs its attention to the first basis raised, whether Plaintiffs stated a claim against Medical Control Defendants in their Complaint.

According to Medical Control Defendants, the Complaint identifies Trevithick and Rudoni, it articulates their statutory duties, but it lacks any factual allegation regarding their conduct.  The Court agrees with Medical Control Defendants' characterization of the Complaint.

Specifically, Plaintiffs allege that Defendant Rudoni is the "Medical Director of [GCMCA], charged with the duty of directing the Board of Directors of [GCMCA] to implement and comply with protocols for the Genesee County Emergency Medical System, as well as having the power to make the executive contracts in the ordinary course of business of the Board of Directors of [GCMCA]; to execute other legal instruments upon prior approval of [GCMCA]; and to perform the normal duties of the chief policy officer of the Board of Directors of [GCMCA], subject only to the directives of [GCMCA]." Id. at ¶ 26.  Defendant Trevithick is the "Executive Director of [GCMCA], having general supervisory control over, and responsibilities respecting the operation of [GCMCA], including proper administration of portions of the Michigan Public Health Code, including the development of protocols and their enforcement within Genesee County." Id. at ¶ 27.   The Complaint makes no mention of these Defendants other than the statements in ¶¶ 26, 27.

Medical Control Defendants further assert that Complaint fails to identify any conduct by the GCMCA relevant to the claims advanced against it.  In reviewing the factual allegations relative to GCMCA, the Court notes that the Complaint describes the

6

statutory role of GCMCA,  see Compl. at ¶¶ 46-51, and specifies that it must have approval from the Michigan Department of Community Health before any protocol can be adopted or implemented, id. at ¶ 51.  A ambulance operation must obtain permission to provide emergency medical services from the local medical control authority, which is the sole agency determining whether to permit an ambulance operation to provide EMS services in the county.  Id. at ¶ 53.  Again the Court agrees with Medical Control Defendants that the Complaint never advances an allegation of wrongdoing.

In addition to reviewing the Complaint, the Court has reviewed those statutory provisions referenced in Plaintiffs' responsive pleading as a basis for their claims against GCMCA.  Notably, local medical control authorities, such as GCMCA, are part of a statewide emergency medical services system established "to supervise emergency medical services" in designated geographical regions.  MICH.COMP.LAWS. § 333.20918 et seq.  Medical control authorities are empowered to establish written protocols, which are defined by section 20908(9) of the Public Health Code as "a patient care standard[s], standing orders, polic[ies], or procedure[s] for providing emergency medical services. . . ."  MICH. COMP. LAWS § 333. 20908.  The Code further provides that the protocols shall include all of the following:

> (a) The acts, tasks, or functions that may be performed by each type of emergency medical services personnel licensed under this part.
>
> (b) Medical protocols to ensure the appropriate dispatching of a life support agency based upon medical need and the capability of the emergency medical services system.
>
> (c) Protocols for complying with the Michigan do-not-resuscitate procedure act.

MICH. COMP. LAWS § 333.20919(1).  In order to implement emergency medical services

7

in their geographic regions, a medical control authority is required to submit written drafts of proposed protocols to and receive approval from the Michigan Department of Community Health prior to adoption and implementation.  MICH. COMP. LAWS § 333.20919(3).

Accordingly, the Court accepts as true, that GCMCA is the lawful provider of oversight of emergency medical services as established by the Michigan Public Health Code and that GCMCA is required to enact protocols for the practice of life support agencies and licensed emergency medical services in Genesee County.  Again the statutory authority, in and of itself, does not advance a claim.

In their responsive pleading, Plaintiffs also assert that the cooperation of GCMCA is necessary to implement the Ordinance, and that cooperation will result in Medical Control Defendants entering into an illegal contract and acceding authority over GCMCA to the County.  Pls.' Response to Medical Control Authority Defendants' Motion for Summary Judgment, p. 6.  Plaintiffs' argument rests on inferences they draw from Paragraph 50 of the Complaint.  It states that "[t]he Ordinance provides that the County shall contract with Medical Control to establish protocols consistent with the Ordinance." Compl. at ¶ 50.  Plaintiffs conclude that a contract will "result in a violation of the Public Health Code" because GCMCA "has never contested the Ordinance despite the illegal result it will create."  Pls.' Response at 6.

Consequently, the Court's next task is to determine whether the allegations in the Complaint are sufficient, when viewed in conjunction with the Ordinance, to state a claim.[1]  The relevant Ordinance provisions follow.

---

[1]The Ordinance, which was not provided as an exhibit to the pleadings, can be found at Doc. No. 16, Ex. 1.

Section 4.1 provides, "This Ordinance establishes a policy that a contract will be entered into between the County and the [GCMCA] (the "MCA Contract") to provide daily oversight and management of the Regulated System by the [GCMCA]. The EMS Coordinator shall recommend a MCA Contract to the Board of Commissioners and the GCMCA."

The Ordinance also specifies contract terms. <u>See</u> Section 4.2. It reads: "The MCA contract shall include, but not necessarily be limited to, the following terms and conditions:

1. The GCMCA will establish protocols consistent with this Ordinance to be followed by all the various components of the Regulated System.

2. The GCMCA will continue to include the EMS Coordinator as a member of the MCA.

3. The GCMCA will continue to fulfill those duties stated in [the Public Health Code, MCL § 333.20919, and applicable rules."

<u>Id.</u>

GCMCA's duties are a matter of public record. In their Complaint, Plaintiffs recognize that Michigan law does not address how counties or local units of government determine who will provide emergency medical services within respective areas. Moreover, "a local governmental unit may enact an ordinance regulating ambulance operations, nontransport prehospital life support operations, or medical first response services. The standards and procedures established under the ordinance shall not be in conflict with or less stringent that those required under this part or the rules promulgated under this part." Compl. ¶ 55. <u>See also</u> MICH. COMP. LAWS § 333.20948 (authorizing a local governmental unit to operate its own ambulance operation or

9

"contract with person to furnish any of those services for the use and benefit of its residents").

These articulated duties do not support Plaintiffs' position that the protocols must remain as they existed prior to the enactment of the Ordinance.  Nor do these articulated duties support Plaintiffs' conclusion that GCMCA is barred from entering into the contract with the County.  Under the Ordinance, the County is required to enter into a contract with GCMCA prior to implementation, but GCMCA has no obligation under the Ordinance to enter into a contract with the County.  The language of the Ordinance does not support Plaintiffs' conclusion that GCMCA will contract its statutory duties to the County.

In sum, Plaintiffs have failed to state a claim even crediting all of the allegations in the Complaint.  The Complaint contains no factual allegations connecting Medical Control Defendants to the enactment of the Ordinance.  Although detailed factual allegations are not required, labels and conclusions are not enough.  Nor does Plaintiffs' speculation that GCMCA will contract away its statutory duty to create protocols that ensure the appropriate dispatching of ambulance operations provide a sufficient basis for the Court to find they have satisfied their pleading burden.  Because there is no conduct by GCMCA at issue in this lawsuit as it is now formulated, the Court grants Medical Control Defendants' request for judgment on the pleadings.   Accordingly, the Court declines to address the arguments raised in support of summary judgment.


## IV.  CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss.  Defendants Genesee County Medical Control Authority (GCMCA), Bruce Trevithick, and Raymond

10

Rudoni. M.D. are hereby **DISMISSED**.

  **IT IS SO ORDERED**.

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

Dated: September 25, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
        Deputy Clerk